UNITED STATES of America, Appellee,

v.

Pershing DUBRAY, Appellant.

No. 87–5409.

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1988.

Decided Aug. 17, 1988.

Gary C. Colbath, Rapid City, S.D., for appellant.

Ted L. McBride, Rapid City, S.D., for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and TIMBERS,* Senior Circuit Judge.

ARNOLD, Circuit Judge.

Pershing Dubray appeals from his conviction for aggravated sexual assault under 18 U.S.C. § 2241. Dubray admits that he committed rape on the Pine Ridge Indian Reservation on March 29, 1987. His only defense at trial was that he was insane at the time of the rape within the meaning of 18 U.S.C. § 17. On appeal, Dubray raises three grounds of error in his trial relating to his affirmative defense of insanity. We find no merit in these grounds, and so we affirm.

On the night of March 28, 1987, Dubray, a nineteen-year-old member of the Oglala Sioux tribe, had been out drinking with friends. In the early morning hours of March 29, he entered the mobile home of a 60-year-old Roman Catholic nun who lived on church property on the Pine Ridge reservation. For approximately four hours, Dubray struggled with the victim, beat her, pinned her to the bed, broke her wrist, threatened to kill her, and raped her.

The next day, police investigators arrested Dubray. After being advised of his rights, Dubray told the police that he had entered the victim's trailer, announcing "Lucifer is here," that he had fought with and raped the victim, and that he had later lost his memory until his arrest. Further investigation revealed that four years earlier, when Dubray was fifteen years old, he had been convicted of raping a 71-year-old nun at the same location under virtually identical circumstances.

At trial, the prosecution presented extensive testimony from the victim of the rape, who gave a detailed account of the attack. The nun testified that her attacker was lucid, speaking to her throughout the attack, and that he appeared to know who she was and where they were. Each side presented psychiatric testimony on Dubray's sanity. Defendant's expert witness, Dr. Lord, testified that Dubray might have had the potential for a transient psychotic episode, which could have produced a moral and cognitive break from reality. The prosecution's expert, Dr. Kennelly, testified that nothing in the victim's account of her attacker suggested that Dubray was suffering from a transient psychosis, and that direct examination of Dubray did not reveal any evidence that he was psychotic at the time of the rape. The jury rejected Dubray's insanity defense, and found him guilty of aggravated sexual assault.

■ On appeal, Dubray argues that the trial court should have directed a verdict of acquittal by reason of insanity. Dubray claims that the prosecution failed to prove beyond a reasonable doubt that he had raped the victim knowingly within the meaning of 18 U.S.C. § 2241, and that the

---

* The Hon. William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

prosecution failed to present clear and convincing evidence that Dubray was sane at the time of the rape. This argument attempts to combine two distinct issues. The prosecution does have the burden of proving beyond a reasonable doubt that Dubray knowingly raped the victim, in the sense that § 2241 requires that the offender must have consciously performed the acts of violence which constitute aggravated sexual abuse. In this case, there is no real dispute that Dubray possessed the requisite *mens rea* of the crime. The testimony of the victim was alone more than sufficient evidence to support the jury's conclusion that Dubray knew what he was doing at the time of the rape.

■ A separate question is whether Dubray, though he consciously committed the rape, was nevertheless insane within the meaning of 18 U.S.C. § 17. Once the prosecution has proved the required mental elements of the crime, a defendant may still establish the distinct affirmative defense of legal insanity by clear and convincing evidence. See *United States v. Amos*, 803 F.2d 419, 421 (8th Cir.1986). Dubray argues that the evidence at trial overwhelmingly establishes that he was insane, relying heavily on the testimony of both expert witnesses that he suffered from some degree of personality disorder. This argument confuses the ordinary meaning of mental illness with the strict standard of legal insanity created by 18 U.S.C. § 17. The psychiatric diagnoses of Dubray in the record clearly portray someone who is antisocial, poorly adjusted, and emotionally disturbed, and psychiatric medicine may (for all we know) usefully categorize Dubray as mentally ill. The fact that Dubray may be suffering from a mental disease or defect does not, however, establish the legal defense of insanity unless this disease or defect prevented him from appreciating the nature and quality or the wrongfulness of the rape. 18 U.S.C. § 17(a).

■ In Dubray's case, the only mental disorder consistent with his history which might have sufficed to establish an insanity defense would have been what Dr. Lord labeled a transient psychotic episode. The nun's testimony tended to contradict Dr. Lord's diagnosis of Dubray as psychotic during the attack. The prosecution's expert witness, after hearing the victim's account of the attack, concluded that Dubray had not been suffering a transient psychotic episode at the time. Dubray's evidence showing psychosis was inconclusive at best, and Dubray, after all, had the burden of proof. The jury was clearly entitled to believe the prosecution's expert rather than the defense's expert, and so we have no reason to disturb the jury's verdict that Dubray was not legally insane at the time of the attack.

■ Dubray argues next that the trial court erred in refusing to submit his proposed insanity defense instruction to the jury. Dubray asked that the jury be instructed that "wrongfulness" implies moral, rather than criminal, wrongdoing, and proposed the verdict director drawing this distinction discussed in *United States v. Segna*, 555 F.2d 226, 232 (9th Cir.1977). Like the Ninth Circuit, our Court recognizes that a defendant's delusional belief that his criminal conduct is morally justified may establish an insanity defense under federal law, even where the defendant knows that the conduct is illegal. See *United States v. Ming Sen Shiue*, 650 F.2d 919, 922 n. 7 (8th Cir.1981). The jury should be instructed on the distinction between moral and legal wrongfulness, however, only where evidence at trial suggests that this is a meaningful distinction in the circumstances of the case. See *id.; Segna, supra*, 555 F.2d at 233.

In this case, there is no evidence that Dubray knew that he was violating the law but nonetheless believed that he was acting morally. The unsuccessful defense case for insanity relied on psychiatric evidence which suggested a complete break with reality, rather than a mental state in which Dubray would have thought of rape as a morally necessary act proscribed by the law. Nothing in the trial record provides a basis on which the jury could believe that Dubray's understanding of moral wrongfulness somehow diverged from his understanding of the legal significance of rape.

Because the moral/legal distinction was unnecessary to the jury's consideration of Dubray's defense, the trial court properly refused the defense's proposed instruction.

■ Finally, Dubray argues that the trial court committed reversible error in denying a defense motion for a mistrial after the government's expert witness testified that Dubray was not psychotic at the time of the rape. Dr. Kennelly's testimony refuted the only possible diagnosis (namely, that Dubray had experienced a transient psychotic episode) which would have established Dubray's insanity defense. Dubray reasons that this expert testimony stated an opinion or inference that Dubray did not have the mental state constituting legal insanity at the time of the rape, in violation of Fed.R.Evid. 704(b).

The present version of Rule 704(b) was not intended to prevent psychiatric experts from "... testify[ing] fully about the defendant's diagnosis, mental state and motivation ... at the time of the alleged act so as to permit the jury or judge to reach the ultimate conclusion about which they and only they are expert." S.Rep. No. 98–225 at 231, *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 3182, 3413. It is true that Dr. Kennelly's diagnosis that Dubray was not psychotic has definite implications for the determination of Dubray's legal sanity, but this is true of all expert testimony in trials with an insanity defense. Diagnoses of "psychosis," "schizophrenia," or other mental disorders must be made using the methodology and assumptions of psychiatric medicine, which are not necessarily the same as those of the criminal law. Just as the law of insanity does not incorporate the changing and often vague categories of contemporary psychiatric method, psychiatric definitions of psychosis do not necesarily entail the legally significant notions of right and wrong. In this case, Dr. Kennelly's testimony was limited to the medical question of psychosis, and did not state an opinion whether Dubray was able to appreciate the wrongfulness of his actions. Accordingly, the testimony offered did not violate Rule 704(b), and the trial court prop-

erly denied the defense motion for a mistrial.

The conviction of Pershing Dubray is affirmed.